UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| CHAD STRUNK, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CASE NO.: 1:13-cv-1556-TWP-DML |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security, Administration, | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. (Dkt. 22). As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Chad Strunk is not disabled.

## Introduction

Plaintiff Chad Strunk applied in January 2011 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that he has been disabled since January 1, 2008. Acting for the Commissioner of the Social Security Administration following a hearing conducted by video conference on June 5, 2012, administrative law judge Joseph L. Brinkley issued a decision on July 13, 2012, finding that Mr. Strunk is not disabled. The Appeals Council denied review of the

ALJ's decision on July 29, 2013, rendering the ALJ's decision for the Commissioner final. Mr. Strunk timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Strunk argues that the ALJ erroneously evaluated the severity of his mental impairments and their effect on his functioning. He contends that the evidence proved that his mental impairments are of listing-level severity and that the ALJ could not reasonably decide otherwise. Mr. Strunk further contends that the ALJ's credibility analysis was flawed and the ALJ's RFC determination did not accurately account for his impairments, principally because Mr. Strunk's low GAF scores prove that he is "totally disabled."

The court first recounts the standard for proving disability under the Social Security Act and the court's standard of review of the administrative decision. The court then addresses Mr. Strunk's specific assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Mr.

---

[1] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and

2

Strunk is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

---

regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and generally at 20 C.F.R. § 416.901 *et seq.*

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Mr. Strunk was born in 1971 and was 36 years old at the alleged onset of his disability in January 2008. He was 40 years old at the time of the ALJ's decision denying disability benefits. His work experience is focused in the construction industry.

At step one, the ALJ discussed that Mr. Strunk had engaged in work activity sporadically in 2008, 2011, and 2012. Mr. Strunk testified that he worked 12-hour shifts as a forklift operator in 2008 for about 2 ½ months and later that year worked part-time doing painting and construction work. In 2011, Mr. Strunk also performed construction work but quit after 10 days because the 9-10 hour work days were too taxing. In 2012, Mr. Strunk was hired to perform repair work "here and there," but he testified that he did little of the work himself and hired someone else to do the work for him. The ALJ found that the evidence did not establish that

Mr. Strunk had engaged in substantial gainful activity since his alleged onset date, and thus moved to the next step of the analysis.

At step two, the ALJ identified severe physical and mental impairments. He found that Mr. Strunk experienced chronic pain stemming from the partial amputation of his left foot in childhood and had mild or moderate degenerative disc disease and early degenerative joint disease. He also found that Mr. Strunk suffered from severe bipolar and anxiety disorders even though Mr. Strunk's claims that mental impairments affected his ability to work were "not consistent." (R. 16). The ALJ emphasized Mr. Strunk's statements within the record that his functional limitations and inability to work were due to chronic pain, without mention of any mental illness or symptom from mental illness. (R.16). At step three, the ALJ decided that no listings were met.

The ALJ next determined Mr. Strunk's residual functional capacity. He decided that Mr. Strunk could perform light work with a sit/stand option, and only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of stairs and ramps. To accommodate Mr. Strunk's mental impairment, the ALJ limited his work to "simple, 1-2 step tasks, no more than superficial contact with the public, and low stress (no production quotas or assembly lines)," and only occasional work in teams or in tandem. (R. 18). With this RFC and based on the testimony of a vocational expert, the ALJ found that Mr. Strunk could not perform his past work which had required work at the heavy or medium levels of exertion. At step five, however, the ALJ determined that Mr. Strunk is capable of performing the

6

requirements of jobs as a router, collator operator, or cleaner/polisher.  These jobs, according to the VE whose testimony was credited by the ALJ, are light and unskilled occupations and available in significant numbers in the State of Indiana and national economy, even though eroded in number by the sit/stand option required by the ALJ.   (R. 22).  Accordingly, Mr. Strunk was found not disabled.

II.  **The ALJ's evaluation of Mr. Strunk's mental impairments at step three and for purposes of his RFC are supported by substantial evidence.**

Mr. Strunk's argument for reversal of the Commissioner's decision that he is not disabled is based on alleged errors in the ALJ's evaluation of his mental impairments at step three and in connection with the ALJ's residual functional capacity determination. He does not challenge the ALJ's evaluation of his physical impairments or their effects on his functioning.  As addressed below, the court finds that the ALJ's decision is supported by substantial evidence.  He addressed the history of Mr. Strunk's mental health treatment at Meridian Health and did not ignore relevant evidence. The ALJ also provided sufficient reasons for (1) rejecting findings in a mental impairment questionnaire completed on May 30, 2012, by a clinical social worker, (2) crediting the findings of the state agency psychologist, and (3) negatively assessing Mr. Strunk's credibility.  Moreover, Mr. Strunk has not shown that the ALJ was required to obtain additional medical testimony to support his evaluation of Mr. Strunk's mental impairments and their effect on his functioning.

7

## A. The ALJ's Step Three Analysis and RFC Finding

At step three, the ALJ evaluated the B criteria for listings 12.04 and 12.06. The B criteria are four broad categories of functioning: daily living activities; social functioning; concentration, persistence, and pace; and episodes of decompensation. A claimant is presumptively disabled by his mental impairments if he has suffered repeated episodes of decompensation of extended duration *and* is markedly limited in one of the other categories, *or* if he is markedly limited in at least two of the three other categories.

The ALJ found that Mr. Strunk was mildly limited in his activities of daily living, citing evidence that Mr. Strunk acknowledged his ability to independently perform daily living activities but at a slow pace because of physical pain, not a mental impairment. He cited Mr. Strunk's abilities to attend to his grooming, prepare simple meals, drive a car (though he lost his license because of unpaid tickets), do yard work, and perform odd jobs and minor repair work. As to social functioning, Mr. Strunk was found to have moderate difficulties. The ALJ credited Mr. Strunk's statements that he has been involved in altercations with coworkers, prefers limited interaction with people, and becomes angry when he is under stress or feeling anxious. The ALJ also considered that Mr. Strunk shops, interacts well with his nieces and nephews with whom he lives, gets along with his mother, uses social networking sites, and was described as friendly at most of his psychotherapy appointments.

8

The ALJ found that Mr. Strunk has moderate difficulties with concentration, persistence, or pace. He noted that Mr. Strunk complained that he had trouble completing tasks, concentrating, and following instructions, but also considered that Mr. Strunk participated in or enjoyed activities requiring good concentration, persistence, and pace skills. Those included drawing, reading, listening to music, "tinkering" with things, performing skilled work, handling money and a checking account, driving, and using a computer. Finally, the ALJ found that Mr. Strunk had suffered no episodes of decompensation of extended duration.

The ALJ summarized various mental health treatment notes from 2011 through 2012. He noted that the records documented Mr. Strunk's complaints regarding anger issues, mood problems, sleeping difficulties, and depressive symptoms, and that his symptoms were reported as exacerbated by situational problems, such as relationship problems with a girlfriend, financial difficulties, having moved in with his mother, substance abuse, and the failure to take medications. (R. 19). He addressed Mr. Strunk's work activities after his alleged onset date, his reports that pain from physical impairments impaired his ability to work, and that he told his counselor of plans to return to school or for vocational training. The psychotherapy notes did not suggest that this plan was contraindicated by his mental impairments. The ALJ also considered the contents of a mental impairment questionnaire completed by a licensed clinical social worker (Douglas Hemmerling), dated May 30, 2012, "low" GAF scores reported on records from Mr. Strunk's mental health services provider, and the opinion of the state

9

consultative psychologist who made findings dramatically more moderate than that supplied by the social worker. (R. 19-21).

## B. Mr. Strunk has not shown that reversal or remand is appropriate.

Mr. Strunk attacks the ALJ's evaluation of the evidence and contends his decision must be reversed primarily on the grounds that the ALJ did not give appropriate weight to the May 30, 2012 mental impairment questionnaire or to "repeated" GAF assessments of 42-45. (*See* Opening Brief, Dkt. 15, at pp. 16-18 and 28, and Reply Brief, Dkt. 23, at pp. 3-5. The court's standard of review does not permit it to reverse on these bases.

First, as to the "repeated" GAF assessments, the record does not bear out that there were *repeated* assessments. The record reflects that Mr. Strunk underwent two mental status examinations producing GAF scores, and the ALJ addressed both of them. Mr. Strunk underwent a comprehensive psychiatric evaluation at Meridian Services in January 2011. That evaluation produced a GAF score of 45. (*See* R. 363, reporting psychological evaluation in January 2011). Mr. Strunk's later mental health records at Meridian Services, which document medication reviews, meetings with his case worker or an intern, and psychotherapy appointments carry forward as a history the results of Mr. Strunk's January 2011 psychological evaluation with its Axis I through Axis V notations, including the GAF score of 45 at Axis V.

The other comprehensive mental health evaluation was conducted by the state agency psychologist later in 2011. That psychologist documented her

10

awareness of Meridian Health's evaluation (and the GAF of 45). She assigned Mr. Strunk a current GAF score of 52. (R. 397). The ALJ determined that the abilities of the claimant, as reflected in the wide range of activities that he engaged in, supported the more moderate view expressed by the state agency psychologist. Because the ALJ adequately addressed Mr. Strunk's overall mental health and assessments within the longitudinal record, the court finds no error requiring remand based on the existence of the low GAF scores in the Meridian Services records. *See also Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010); *Wilkins v. Barnhart,* 69 Fed. Appx. 775 at *4 (7th Cir. 2003) (cited by *Denton*) (ALJ was not required to mention a GAF score of 40 because a GAF score is designed to influence treatment decisions and not to measure disability under the Social Security Act).

Second, the ALJ provided sufficient grounds for rejecting the opinions reflected by the social worker in the May 30, 2012 mental impairment questionnaire. He found that its author was an "unacceptable medical source," endorsed symptoms and functional limitations that were not supported by his treatment notes, claimed that Mr. Strunk had suffered three or more episodes of decompensation when the record revealed no such episodes and was inconsistent with the types of activities that Mr. Strunk had actually engaged. (R. 19-20). Mr. Strunk contends that the ALJ's characterization of the social worker as an "unacceptable" medical source and a comment that Mr. Strunk had denied hallucinations as wholly undermining the ALJ's decision to not give weight to the social worker's opinion.

11

There is no error requiring remand on these two points. The ALJ's characterization of the social worker as an "unacceptable" medical source refers to the types of medical providers whose opinions can be entitled to controlling weight. *See* 20 C.F.R. § 404.1513 (defining "acceptable medical sources" such as licensed treating physicians whose opinions can be entitled to controlling weight). It was appropriate for the ALJ to classify whether the social worker was an "acceptable medical source" as part of his evaluation, and then go on to address his acceptance or critique of the contents of that provider's opinions. The ALJ's discussion that the questionnaire endorsed Mr. Strunk's suffering from "hallucinations and delusions," in contrast to psychotherapy records indicating Mr. Strunk "generally denied" such symptoms at medical visits was also a fair point to make. (R. 20). Mr. Strunk did routinely—even if not always—deny the existence of hallucinations, and he denied any such symptoms during his evaluation by the state agency psychologist. In addition, Mr. Strunk points to no records indicating he was ever found to be delusional.

**C. The ALJ was not required to summon a medical expert.**

The court also rejects Mr. Strunk's argument that the ALJ was required to summon a medical expert to give testimony at the administrative hearing regarding whether a listing was met. The ALJ had the benefit of the expertise of state agency doctors regarding whether Mr. Strunk's mental impairments were of listing-level severity (and relied on their opinions) and Mr. Strunk does not suggest that the administrative record lacked sufficient evidence to permit an evaluation whether he

was disabled. He also does not point to a line of evidence that the ALJ failed to evaluate in the context of the listings or otherwise in determining whether he was disabled. The two pieces of evidence Mr. Strunk contends "proved" his disability were evaluated by the ALJ. He gave reasoned explanations for his evaluation of the Meridian Services GAF scores and the May 30, 2012 mental health questionnaire, as well as the other evidence in the record that post-dated the agency physicians' analyses. Under these circumstances, the court cannot find that the ALJ was required to obtain more evidence. *E.g., Kendrick v. Shalala,* 998 F.2d 445, 456-57 (7th Cir. 1993) (court must generally respect the ALJ's determination whether the record is sufficiently complete to decide disability).

### D. The ALJ's credibility determination is not patently wrong.

The ALJ also made sufficient findings to support his negative credibility determination. His opinion reflects the consideration of several factors reflecting poorly on Mr. Strunk's credibility, including particularly that Mr. Strunk was able to engage in skilled work activities after his alleged disability onset date and had made inconsistent statements regarding his continued use of alcohol and illegal substances. Mr. Strunk's arguments to the court that the ALJ was "intentionally vague" about credibility and did not "city any evidence" to support his credibility finding cannot be squared with the contents of the ALJ's opinion. The ALJ sufficiently examined Mr. Strunk's subjective complaints in light of the objective medical evidence and other pertinent evidence including his daily living activities, precipitating and aggravating factors, medication, and historical mental health

13

treatment evidence. The court owes substantial deference to the ALJ's credibility finding and cannot find here that it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008) (ALJ is in best position to evaluate a claimant's credibility and his determination will not be set aside unless patently wrong).

### E. The ALJ accommodated the effect of Mr. Strunk's mental impairment on concentration, persistence, and pace.

While the ALJ found that Mr. Strunk's mental impairment moderately posed difficulties with concentration, persistence, or pace, he also found that Mr. Strunk's particular difficulties were accommodated by jobs that were simple, low stress, and required little interaction with others. Those restrictions and their tie to Mr. Strunk's mental impairments are supported by the mental RFC form completed by the state agency psychologist. Under those circumstances, the court cannot find any error. *See Johansen v. Barnhart,* 314 F.3d 283, 288-89 (7th Cir. 2002) (ALJ adequately incorporated claimant's mental impairments into his RFC when he relied on opinion of consulting physician who "translated her findings into a specific RFC assessment"). Because, as the ALJ found, Mr. Strunk's RFC is consistent with the demands of significant jobs available in the economy, the Commissioner's decision that Mr. Strunk is not disabled must be affirmed.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections within 14 days after service will

constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: February 17, 2015

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system